UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA M. BEVERIDGE,                    Case No. 10-12883

       Plaintiff,                   David M. Lawson
v.                                       United States District Judge

COMMISSIONER OF                          Michael Hluchaniuk
SOCIAL SECURITY,                         United States Magistrate Judge

       Defendant.
_____/

**REPORT AND RECOMMENDATION
PLAINTIFF'S MOTION TO REMAND (Dkt. 9) AND
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 12)**

## I.  PROCEDURAL HISTORY

    A.  Proceedings in this Court

On July 22, 2010, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge David M. Lawson referred this matter to Magistrate Judge Virginia M. Morgan for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance, and supplemental security income benefits. (Dkt. 3). On March 11, 2011, this matter was reassigned to the undersigned. This matter is before the Court on plaintiff's motion to remand and

1

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

defendant's motion for summary judgment. (Dkt. 9, 12).

  B. <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on June 18, 2007, alleging that she became unable to work on February 10, 2007. (Dkt. 7, Tr. at 132). The claim was initially disapproved by the Commissioner on October 3, 2007. (Dkt. 7, Tr. at 69-77). Plaintiff requested a hearing and on January 22, 2010, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Sherry Thompson, who considered the case *de novo*. In a decision dated March 8, 2010, the ALJ found that plaintiff was not disabled. (Dkt. 7, Tr. at 47-57). Plaintiff requested a review of this decision on March 25, 2010. (Dkt. 7, Tr. at 43). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-13E, Dkt. 7, Tr. at 4), the Appeals Council, on June 24, 2010, denied plaintiff's request for review. (Dkt. 7, Tr. at 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

2

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion to remand be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was thirty-eight years of age at the time of the most recent administrative hearing. (Dkt. 7, Tr. at 11, 12). Plaintiff's relevant work history included approximately fifteen years as a cashier, cleaning person, food service worker, collection agency manager, and receptionist. (Dkt. 7, Tr. at 198). In denying plaintiff's claims, defendant Commissioner considered fibromyalgia, depression, anxiety, chronic back pain, and obesity as possible bases of disability. (Dkt. 7, Tr. at 126).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since February 10, 2007. (Dkt. 7, Tr. at 49). At step two, the ALJ found that plaintiff's chronic pain secondary to fibromyalgia and major depression were "severe" within the meaning of the second sequential step. *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 7, Tr. at 50). At step four, the ALJ found that

3

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

plaintiff could perform her previous work as a cashier and thus, was not disabled under the Act. (Dkt. 7, Tr. at 55).

B. <u>Plaintiff's Claims of Error</u>

Plaintiff first claims that the ALJ failed to give the proper weight to the opinions of Dr. Bash, plaintiff's treating physician and failed to give sufficiently good reasons for rejecting his opinions. Plaintiff also argues that the ALJ failed to analyze plaintiff's claim under SSR 99-2P, which applies to chronic fatigue syndrome. For these reasons, plaintiff requests that this matter be remanded under sentence four.

C. <u>The Commissioner's Motion for Summary Judgment</u>

The Commissioner first argues that plaintiff's treating physician, Dr. Bash, did not given an appropriate opinion from a functional perspective — how much she could lift, sit, stand, and the like. Had he done so, the Commissioner acknowledges that his opinion would be a medical opinion entitled to consideration under the treating source rule. But Dr. Bash merely gave an opinion on the ultimate issue of whether plaintiff could work (i.e., whether she was disabled), to which the ALJ was not required to give any special weight and which was not a "medical opinion." Thus, the Commissioner argues that the ALJ reasonably observed that Dr. Bash's statement was less helpful because it did not state specific medical limitations or explain why they were recommended. (Tr.

4

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

54). The Commissioner further asserts that the ALJ gave several good reasons for declining to find plaintiff disabled, including her activities, conservative treatment history, inconsistencies, generally positive mental status and progress notes, and consistent medical opinions. The Commissioner also argues that plaintiff was never diagnosed with chronic fatigue syndrome and that plaintiff's attempt to cobble together such a diagnoses should be rejected.

### III.   ANALYSIS AND CONCLUSIONS

#### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions

5

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion

6

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of

7

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have

8

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her

9

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

> past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

10

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Chronic Fatigue Syndrome</u>

Frankly, the undersigned is mystified by plaintiff's claim that the ALJ erred by not analyzing her claim under SSR 99-2p, which applies to the evaluation and assessment of chronic fatigue syndrome (CFS).  SSR 99-2p, 1999 WL 271569 (S.S.A.).  The Commissioner correctly points out that plaintiff has never been diagnosed with CFS and has been consistently diagnosed with fibromyalgia and possible rheumatoid arthritis.  As expressly set forth in SSR 99-2p, CFS and fibromyalgia are two entirely separate syndromes:

> There is considerable overlap of symptoms between CFS and Fibromyalgia Syndrome (FMS), but individuals with CFS who have tender points have a medically determinable impairment. Individuals with impairments that fulfill the American College of Rheumatology criteria for FMS (which includes a minimum number of tender points) may also fulfill the criteria for CFS. However, individuals with CFS who do not have the specified number of tender points to establish FMS, will still be found to have a medically determinable impairment.

SSR 99-2p, n. 3.  In this case, the record is replete with evidence that plaintiff suffered from fibromyalgia and that her treating physicians treated her for

11

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

fibromyalgia. In contrast, there is no mention whatsoever of CFS or the diagnosis or treatment of CFS. As noted by the Commissioner, many of the symptoms of CFS and fibromyalgia overlap, including "chronic fatigue." However, the mere mention that plaintiff suffered from "chronic fatigue" in her medical records does not support her claim that she in fact had CFS or was diagnosed with CFS. Thus, the undersigned finds no basis to disturb the findings and analysis of the ALJ based on this argument.

    D.    <u>Treating Physician Evidence</u>

There is no question that the ALJ did not defer to the opinions of Dr. Bash. The question is whether he did so properly. The Commissioner argues that Dr. Bash's opinion on the issue of plaintiff's disability was not entitled to any deference because it was on the ultimate issue reserved to the Commissioner. Plaintiff argues that Dr. Bash sufficiently opined regarding plaintiff's functionality. Dr. Bash wrote:

> I do not think Ms. Beveridge could work even a sit down job on a full-time basis because of her symptoms of Depression and chronic pain due to Fibromyalgia. There is a high percentage of people with Fibromyalgia who are also depressed. This is the case for Ms. Beveridge. Looking at the entire picture, it would be difficult for her to maintain employment.

(Dkt. 7-10, Pg. ID 700, Tr. at 683). The undersigned agrees with the ALJ that Dr. Bash's opinion was not very helpful given that it did not state specific medial

12

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

limitations or why they were recommended. He merely identified the common symptoms of fibromyalgia and concluded that plaintiff could not work because of them.

More significantly, in the view of the undersigned, the ALJ gave sufficiently good reasons for rejecting Dr. Bash's conclusory opinion. The ALJ discussed how plaintiff self-reported activities militated against a finding of disability. (Tr. 51-53). For instance, when she filled out her disability paperwork in mid-2007, plaintiff reported a wide range of activities. Plaintiff took care of her six-year old daughter as a single mother, including feeding, teaching, disciplining, and play needs. (Tr. 209). She took care of a cat, giving it food and water, taking out its litter box, and even bathing it. (Tr. 209). She wrote that she made multi-course meals taking 30-60 minutes of preparation time, in part because her daughter did not like sandwiches. (Tr. 210). She also cleaned, laundered, performed "light repairs," trimmed bushes, watered plants with her daughter, and sewed. (Tr. 210). These activities took her from 2 hours to all day, but she apparently declined most offers of help from her friends. (Tr. 210). She shopped for 60-90 minutes per week and managed her finances. (Tr. 211). Plaintiff attended religious services three times per week. (Tr. 212). She admitted to being able to lift 20 pounds and walk a quarter mile without rest. (Tr. 213). Although she stated she used a cane, she did not indicate that the cane was prescribed by a

13

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

doctor when asked. (Tr. 214). Plaintiff's mother filled out a third-party function report in 2007, which is largely consistent with plaintiff's self-report. Plaintiff's mother also indicated that plaintiff did yard work including riding a lawn mower, took her daughter to and from school, and volunteered at school. (Tr. 230-31). She was "constantly doing chores or [providing] care for her daughter." (Tr. 231). She rode a bicycle and gardened. (Tr. 233).

In addition, at a consultative examination in fall 2007, plaintiff reported getting along well with neighbors and having five or six "good" friends. (Tr. 432). She stated that she continued to garden some, indicating that her gardening activity had declined not because of her physical condition but because she could not afford gardening supplies anymore. (Tr. 432). She endorsed doing "all the chores," including cooking, cleaning, dishwashing, laundry, and shopping. (Tr. 432). Plaintiff was able to attend a religious conference in July 2009. (Tr. 605). She asserted in November 2009 that she had been restricted to ten pounds lifting, use of a cane for balance, and voluntarily not driving due to fibromyalgia (but there is nothing in the record showing a physician actually imposed these limitations). (Tr. 673). At the hearing, plaintiff stated that she laundered, washed dishes, vacuumed, and straightened up things during the day and cared for her daughter after school. (Tr. 19). She continued to attend religious services twice a week. (Tr. 21). When asked how she was able to do so given her conditions,

14

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

plaintiff explained that she fidgeted and took short walks to the bathroom from time to time. (Tr. 28). Also, she attended school conferences even though she was uncomfortable with the other parents around, suggesting plaintiff's social anxiety did not rise to disabling levels. (Tr. 20).

The ALJ also pointed to the plaintiff's work activity in 2007 after she alleges she became disabled. Although plaintiff alleged disability beginning in February 2007, she continued working an average of 21 hours per week at a steakhouse until May 2007. (Tr. 220). In that position, she prepared and carried food, working on her feet all day. (Tr. 220). She also regularly walked, stooped, crouched, and handled both big and small items. (Tr. 220). She frequently lifted ten pounds and at times lifted 100 pounds or more. (Tr. 220). Plaintiff submitted a resume with her disability application. (Tr. 265). She wrote that she was seeking a "responsible position in the clerical field" and that she had "used [her part-time job] to look for [a] full-time job." (Tr. 265). In May 2007, plaintiff stated that she could not work at the time because of medication she was taking, but that if she was not going to be on that medication for a long time she would seek a new line of work. (Tr. 317). She indicated on a form given to her mental health provider in June 2007 that she was looking for work. (Tr. 401). As the ALJ discussed, these facts support a finding that plaintiff could work at a job with lower physical demands than her position as a steakhouse worker. (Tr. 53). Also,

15

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

the ALJ correctly observed that plaintiff was no longer taking the medication she alleged made her leave the steakhouse job. (Tr. 53-54).

The ALJ also pointed to plaintiff's conservative treatment to support a finding of no disability and to discount her treating physician's conclusions. As the Commissioner points out, plaintiff regularly consulted with doctors, including specialists, and there is no suggestion in the record that she faced any significant barriers in access to health care. Yet as the ALJ noted, the record is remarkable for the conservative nature of the treatment that plaintiff received. (Tr. 53). Although she was placed on codeine (Tylenol #3) briefly in June 2007, the record indicates that she quickly discontinued this medication, apparently on her own initiative. At the 2007 psychological consultative examination, plaintiff reported that she had been "out of this" medicine for three months and that she was taking her ibuprofen only once a week. (Tr. 430). Beyond that, plaintiff was prescribed ibuprofen and gabapentin (neurontin). Even though plaintiff alleges that she had a disabling condition, she was maintained on just these medications. And when asked at the hearing whether her pain medication relieved her symptoms, plaintiff responded: "Not entirely," thus conceding that they provided some relief. (Tr. 16). It is entirely appropriate for the ALJ to rely on the conservative nature of treatment in assessing the extent of impairment and credibility of the claimant. *See e.g., Struchen v. Astrue*, 2010 WL 3259895, *4 (N.D. Ohio 2010); *Patrick v.*

16

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

*Astrue*, 2010 WL 235032, *6 (E.D. Ky. 2010); *Ealy v. SSA*, 172 Fed.Appx. 88 (6th Cir. 2006) (*per curiam*) (upholding ALJ's determination that claimant's "claimed limitations 'were not fully credible' because they were 'inconsistent with ... the lack of more aggressive treatment ... and the claimant's ordinary activities.'").

Plaintiff's rheumatologist recommended that she take hydroxychloroquine (an anti-malarial drug with efficacy against some rheumatological disorders) but she was "undecided." (Tr. 571). He reiterated this recommendation to her in a letter about a week later. (Tr. 569). Apparently, plaintiff did not try the recommended drug. Plaintiff's decision not to accept recommended treatment suggests her condition was not disabling. *See* SSR 97-6p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."); *see also Schrader v. SSA*, 2008 WL 360649, *2 (W.D. Mich. 2008) (The ALJ may take a claimant's failure to comply with medication, diet, exercise or other treatment prescriptions as undermining the credibility of her claims of pain and functional limitation.). Thus, the undersigned agrees with the Commissioner that it was reasonable for the ALJ to find that the absence of treatment other than conservative medication with visits to a primary care physician every three months suggested plaintiff's physical impairments were

17

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

not of a disabling severity.

As far as plaintiff's mental impairment, she was not on any anti-depressant or anti-anxiety agent for most of the time period under review. Although plaintiff claimed that she was not on anti-depressants because they were not effective, this statement does not seem consistent with the record given that in December 2007, she reported that medication was helping with her depression, rating it only as a 3. (Tr. 485, 487). In May 2007, plaintiff was prescribed the antidepressant Lexapro (Tr. 317), but she told the psychological examiner a few months later that she never even tried this prescription. (Tr. 431). While plaintiff was receiving regular group and individual counseling, that appears to be the only mental health treatment she received. The undersigned agrees with the Commissioner the sparsity of psychiatric treatment supports the ALJ's finding that plaintiff did not have a disabling mental impairment.

For these reasons, the undersigned concludes that there is no basis to remand the claim to the Commissioner and that the ALJ's decision to give plaintiff's treating physician's conclusory opinions less weight is supported by substantial evidence in the record, including plaintiff's medical records, her conservative treatment, and her reported level of activity.

### IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

18

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

plaintiff's motion to remand be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the

19

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 18, 2011            s/Michael Hluchaniuk
                                                      Michael Hluchaniuk
                                                      United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on July 18, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Lewis M. Seward, Judith E. Levy, AUSA, and the Commissioner of Social Security.

                                                      s/Darlene Chubb
                                                      Judicial Assistant
                                                      (810) 341-7850
                                                     darlene_chubb@mied.uscourts.gov

20

Report and Recommendation
Motion to Remand/Motion for Summary Judgment
*Beveridge v. Comm'r*; Case No. 10-12883